UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHAINE J.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

19-CV-01601-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

Plaintiff Shaine J.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 8) is granted, defendant's motion (Dkt. No. 13) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed an application for SSI on April 20, 2016, alleging disability since September 1, 1997, later amended to April 20, 2016. (Tr. 17, 45, 221, 267) After plaintiff's application was denied at the initial level, he requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 108-13, 116-18) A hearing was held before ALJ Lynette Gohr on September 4, 2018, in Buffalo New York. (Tr. 36-73) On November 30, 2018, the ALJ issued an unfavorable decision. (Tr. 17-29) The Appeals Council subsequently denied plaintiff's request for review. (Tr. 1-8) Thus, the ALJ's decision stands as the final decision of the Commissioner. This action followed. (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

5

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended onset date of April 20, 2016. (Tr. 20) At step two, the ALJ found that plaintiff had the severe mental impairments of autism disorder, depression disorder, borderline intellectual functioning status post fetal alcohol syndrome, ADHD, Asperger's syndrome, reactive attachment disorder, PTSD, and oppositional defiance disorder. (Tr. 20) At step three, the ALJ determined that none of plaintiff's impairments met or medically equaled the Listings. (Tr. 25-26) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform the full range of work at all exertional levels with significant non-exertional limitations: work involving simple, routine tasks; simple work-related decisions; minimal changes in work routines and processes; no strict production quotas; only occasional interaction with the public; only brief, incidental interaction with co-workers; and no tandem job tasks requiring cooperation with co-workers. (Tr. 23)

Proceeding to step four, the ALJ found that plaintiff had no past relevant work. (Tr. 27) At step five, relying on testimony from a vocational expert, the ALJ found that plaintiff could perform the representative jobs of cleaner, laborer, and production helper. (Tr. 28) Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning of the Act. (Tr. 28-29)

IV.   *Plaintiff's Challenges*

Plaintiff seeks remand of the ALJ's decision on multiple grounds: (1) the ALJ's exclusion of material evidence already in her possession constituted an abuse of discretion; (2) the ALJ's step three finding that plaintiff did not meet Listing 12.11 was unsupported by substantial evidence; (3) the ALJ rejected all medical opinions, therefore creating a gap in the record; and (4) the ALJ's determination was based on mischaracterizations of the record. (Dkt. No. 8-1 at 15-37) Having reviewed the record before the ALJ, the transcript of the administrative proceedings, and the ALJ's decision, the Court agrees that the ALJ mischaracterized and selectively read the record, warranting remand.

Born on April 12, 1995, plaintiff was twenty-three years old at the time of the hearing. (Tr. 307) He received a local diploma in special education, and previously worked as a vending assistant in a sheltered workshop. (Tr. 268-69, 307, 427) He has a history of developmental delays stemming from fetal alcohol syndrome and tested positive for cocaine after birth. Plaintiff received speech, occupational, and physical therapy, and resided in a group home until 2017. He received special education services in school, where he was classified as emotionally disturbed with borderline intellectual functioning, behavioral issues, poor grades, and aggression. Plaintiff's testing revealed IQ scores in the range of 71-75. (Tr. 24) Without reciting in detail each piece of the extensive medical, vocational, and residential evidence, the Court observes that record in this case (including the evidence excluded by the ALJ)[3] presents a "diagnostically complex" individual. (Tr. 443; 455)

---

[3] Plaintiff's counsel submitted over 1400 pages of evidence less than five days before the hearing. (Tr. 17, 759-2188) The ALJ entered the evidence into the record but declined to consider it. (Tr. 17-18)

7

In this case the ALJ found plaintiff not disabled, relying largely upon his daily activities, "generally unremarkable" psychiatric findings, and statements by his group home director that he was "very independent." (Tr. 23-27)

It is well-settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Social Security Ruling 96–8p, 1996 WL 374184, at *7 (S.S.A.); *see also Balsamo v. Chater*, 142 F.3d 75, 80–81 (2d Cir. 1998). "Courts in this Circuit have found reversible error where an ALJ arrives at an RFC assessment in reliance on a mischaracterization or misstatement of the record." *Trumpower v. Colvin*, No. 13–cv–6661, 2015 WL 162991, at *15 (W.D.N.Y. Jan. 13, 2015) (reversing where, *inter alia*, the ALJ ignored significant evidence of plaintiff's psychiatric disorders) (citing *Lugo v. Chater*, 932 F. Supp. 497, 503 (S.D.N.Y. 1996). Further, an ALJ may not "cherry pick" from the evidence, *i.e.*, she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source. *Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."); *see also Starzynski v. Colvin*, No. 15-cv-00940, 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.").

Here, the ALJ's selective reading and mischaracterization of the record does not constitute substantial evidence.

The ALJ's decision is replete with references to the purported fact that plaintiff was "very independent." (Tr. 25-27) Yet the record indicates that plaintiff had borderline intellectual functioning, difficulty dealing with supervisors, and lived in a group facility. A complete reading of the cited text is instructive. Plaintiff's Heritage Centers Individual Service Plan, dated June 11, 2015, states:

> [Plaintiff] is a very independent and capable young man. At this time [plaintiff] is not able to be left home alone and requires periodic observation. [Plaintiff] requires range of scanning supervision within the community. [Plaintiff] requires periodic observation when the stovetop is on. [Plaintiff] requires periodic observations while at work. During hours of sleep, [Plaintiff] requires period observation . . . Staff ensures that [plaintiff] is free from sexual exploitation as he is not capable of consenting to sexual activity.

(Tr. 429) The Plan also reported that plaintiff had been found stealing items from his jobsite, and that he had fashioned items into potential weapons but did not use them in an aggressive manner. (Tr. 430) Although plaintiff could "read fluently," he could "not comprehend what he reads." (Tr. 431) Additionally, he "may not recognize the value of coins and bills." (Id.) Plaintiff could understand right from wrong and the consequences of his actions but did not always make good decisions. (Id.) Finally, the Plan reported that "[plaintiff] is vulnerable in the community due to his disability and history of inappropriate behaviors. [He] is also at risk of being exploited by others due to lack of understanding. [Plaintiff] is currently receiving 24-hour supervision within an [Individualized Residential Alternative] setting to minimize these risks." (Id.)

The Court finds that the ALJ's repeated references to plaintiff being "very independent" to support the disability determination does not accurately represent the evidence cited. See Strange v. Comm'r of Soc. Sec., No. 13-CV-527, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) ("A classic case of cherry-picking evidence occurs when

administrative law judges credit information consistent with their findings while ignoring or discrediting inconsistent information from the same sources without providing plausible reasons.").

The ALJ also referenced a recommendation that "the claimant move to a higher functioning home" in support of her rejection of plaintiff's alleged difficulty in interacting with people in authority positions and his need for supervision. (Tr. 25; 27). The Court has reviewed the May, 2016, clinic report from a psychiatric nurse practitioner (signature ineligible). (Tr. 501) That document also includes the notation, "[follow-up] PRN – Is [patient] able to make his own decisions?" (*Id.*) Significantly, plaintiff was not moved to a less restrictive setting, but instead left without consent. (Tr. 498-99)[4] At the September 4, 2018, administrative hearing, plaintiff testified that he had been living with his mother for a couple of months after leaving the group home:

> Q: Why did you stop living at the group home?
> 
> A. [B]ecause I wanted to be independent.
> 
> Q: [D]id something happen and you got kicked out?
> 
> A: No.
> 
> Q: You just left on your own?
> 
> A: It was I had to go to a lot of stuff to [sic], a lot of paperwork so I can get out of the home.
> 
> Q. Did they think you should still consider continue [sic] living there?
> 
> A: They did.

---

[4] A Behavior Support Plan completed on March 21, 2017, reads: "If [plaintiff] leaves without consent, follow the policy for missing persons which states: formal search procedures should be implemented *immediately* for those individuals whose absence may constitute a potential danger to themselves or others." (Tr. 498, emphasis in original).

> Q: Why did they think you should stay there?
>
> A: Because they, they didn't think I was ready to be on my own, anything like that.

(Tr. 46) Plaintiff also told the ALJ that he had recently been kicked out of the house by his mother due to verbal altercations. (Tr. 47-48) Read in context with other record evidence, the ALJ improperly relied upon this isolated notation to support her finding that plaintiff was able to sustain competitive work. *See Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *10 (E.D.N.Y. Aug. 28, 2009) (ALJ improperly employed a "pick and choose approach" when he selectively paraphrased a letter from plaintiff's psychiatrist).

In light of these errors, the RFC is not supported by substantial evidence. Because the Court finds that remand of this matter for further administrative proceedings is necessary, it declines to reach plaintiff's remaining arguments. *See, e.g., Insalaco v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 401, 410 (W.D.N.Y. 2019).

On remand, the ALJ shall evaluate all of the evidence using the correct legal standards. This should include the late-submitted evidence of record to the extent it is relevant to the alleged period of disability. *See* Discussion at 7, n.3.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 13) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   November 23, 2020
         Buffalo, New York

                                              MICHAEL J. ROEMER
                                              United States Magistrate Judge